601 So.2d 320 (1991)
STATE of Louisiana
v.
Bobby HOOKFIN.
No. 90-KA-1688.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1991.
Harry F. Connick, Dist. Atty., Connie Gyer, Asst. Dist. Atty., New Orleans, for state.
*321 Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant.
Before SCHOTT, C.J., and LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendant was charged with possession of cocaine with intent to distribute and obstruction of justice.[1] He pleaded not guilty to both counts and was found guilty by the jury of attempted possession of cocaine with intent to distribute on count one and guilty as charged on count two. He was sentenced to fifteen years at hard labor on the first count and to fifteen years at hard labor on the second count as a multiple offender. Both sentences were to run concurrently.

STATEMENT OF THE FACTS:
In August of 1987, Detective Donald Polk was working undercover in a narcotics investigation. On August 3, he bought a small amount of cocaine for $25.00 from a person named "Giovanni" at 600 Pauline Street. Polk told Giovanni that he wanted to buy two ounces of cocaine. Giovanni said that it would cost $2,800, and he gave Polk a beeper number to call to set up the deal. Polk called the number, and spoke to the defendant who set the deal for August 6 at 600 Pauline. A search warrant for that address was obtained. He was given twenty-eight hundred dollar bills which were photocopied.
On August 6, Polk and a confidential informant went to 600 Pauline, while other police officers surrounded the house in preparation for executing the search warrant. Polk knocked at the door, and defendant answered and allowed Polk and the informant to enter. When Polk entered, defendant introduced Polk to his brother Melvin and to Norbert Henry. Polk gave defendant the $2,800, and defendant gave Polk two plastic bags partially filled with a white powder which Polk recognized as cocaine. Polk stuffed the cocaine into his pants and prepared to leave.
As Polk and the informant started to leave, Melvin's beeper went off and warned that there were police outside. Defendant slammed shut the front door and demanded that Polk give him back the cocaine so that he could flush it down the toilet. After a short argument, Polk did so and followed defendant to the bathroom where Melvin and Norbert were flushing other bags of cocaine. Polk saw defendant flush his two bags of cocaine and $2,800. Polk did not reveal his identity as a police officer.
The police officers who had been outside entered the house and placed all the occupants, including Polk and the informant, under arrest. The police searched the house and found two small plastic bags containing cocaine residue on top of a kitchen cabinet. No other cocaine was found, but plastic baggies with the corners cut out, a metric scale, a beer can with a removable bottom, two walkie-talkies, and mail addressed to defendant were found and seized. The police also seized a traffic citation issued to defendant on August 2, 1987 which listed 600 Pauline as his address. The police dismantled the plumbing beneath the house, but neither the cocaine nor the money was found in the toilet pipes.
Defendant made a statement to one of the officers to the effect that he had flushed the cocaine and money and that Polk and the informant had nothing to do with it.
Detective Michael Glasser, who participated in the search of 600 Pauline, was qualified as an expert in the packaging and distribution of narcotics. He testified that because the house was fortified with iron bars on the doors and windows and with strong locks, it was likely to be used as an outlet for the sale of drugs. He further testified that the house was being used to sell drugs because of the walkie-talkies and the intercom system found inside and outside. *322 Glasser testified that the baggies with the corners cut off meant that the corners had been used to package cocaine for sale.

ERRORS PATENT:
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1:
In his first assignment of error, defendant complains that the State failed to prove beyond a reasonable doubt that he was guilty of attempted possession of cocaine with intent to distribute. He argues that the State failed to show that he constructively possessed the cocaine residue from the two bags in the kitchen or that he intended to distribute that cocaine. With regard to constructive possession, defendant claims that there was no evidence that he resided or leased 600 Pauline, that he was ever in the kitchen, or that he knew there was cocaine in the kitchen. As to intent to distribute, he contends that the amount of cocaine seized was so small that the only reasonable inference was that the cocaine was for personal use and not distribution.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987). When the conviction is based upon circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence. R.S. 15:438; State v. Camp, 446 So.2d 1207 (La.1984). This is not a stricter standard of review, but it is an evidentiary guide for the jury when it considers circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985). If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails; and unless another one creates reasonable doubt, the defendant is guilty. State v. Captville, 448 So.2d 676 (La.1984).
To support a conviction of possession of cocaine with intent to distribute, the State must prove that the defendant knowingly or intentionally possessed the cocaine and that he did so with the intent to distribute it. R.S. 40:967; State v. James, 581 So.2d 349 (La.App. 4th Cir.1991). To prove an attempt to possess, the State must prove that the defendant committed an act tending directly toward the accomplishment of his intent, i.e. possession of the drugs. State v. Chambers, 563 So.2d 579 (La.App. 4th Cir.1990). Moreover, the State need only establish constructive possession, rather than actual or attempted actual possession of cocaine, to support an attempted possession conviction. State v. Jackson, 557 So.2d 1034 (La.App. 4th Cir. 1990).
Neither the mere presence of the defendant in an area where drugs have been found nor the mere fact that he knows the person in actual possession is sufficient to prove constructive possession. State v. Bell, 566 So.2d 959 (La.1990). Additionally, being a resident of premises where drugs are found is not in and of itself sufficient to prove constructive possession. State v. Collins, 584 So.2d 356 (La.App. 4th Cir.1991). Nevertheless, a person found in the area of the contraband can be considered in constructive possession if it is subject to his dominion and control. State v. Trahan, 425 So.2d 1222 (La.1983). The defendant can have constructive possession if he jointly possesses the drugs with a companion and if he willfully and knowingly shares with his companion the right to control of the drugs. State v. Walker, 369 So.2d 1345 (La.1979).
The following factors should be considered in determining whether the defendant exercised dominion and control so as to constitute constructive possession: the defendant's knowledge that illegal drugs were in the area; the defendant's relationship with the person in actual possession; the defendant's access to the area where the drugs were found; evidence of recent drug use; the defendant's proximity to the drugs; and any evidence that the area was frequented by drug users. Bujol v. Cain, 713 F.2d 112 (5th Cir.1983) cert. den. 464 *323 U.S. 1049, 104 S.Ct. 726, 79 L.Ed.2d 187; State v. Tasker, 448 So.2d 1311 (La.App. 1st Cir.1984), writ denied, 450 So.2d 644 (La.1984).
The State proved defendant had constructive possession of the cocaine found in the kitchen. Contrary to defendant's contentions, the State established defendant's residency at 600 Pauline by way of the mail addressed to the defendant, and found on the premises, and the traffic citation issued to defendant four days before the arrest which listed his address as 600 Pauline. A Radiophone beeper was registered in his name at that address. In and of itself, these facts do not establish constructive possession; but coupled with defendant's having exercised dominion and control (his sale of cocaine to Polk) over the other cocaine in the house which was flushed down the toilet lead to the conclusion that the cocaine found in the kitchen was subject to his dominion and control as well.
Regarding the element of intent to distribute, the State must prove specific intent to distribute. State v. Roberts, 550 So.2d 1254 (La.App. 4th Cir.1989), writ den. 558 So.2d 599 (La.1990). Specific intent can be inferred from the circumstances of the transaction. State v. Myre, 502 So. 2d 1105 (La.App. 4th Cir.1987), set forth the factual circumstances that would support an inference of intent to distribute. This Court stated:
Factual circumstances from which the intent to distribute a controlled dangerous substance may be inferred include: previous distribution or attempted distribution by the defendant; the presence of paraphernalia for distribution; possession of an amount sufficient to create a presumption of intent to distribute; and packaging in a form usually associated with distribution rather than personal use. State v. House, 325 So.2d 222 (La. 1976); State v. Benton, 464 So.2d 960 (La.App. 4th Cir.1985). Id., 502 So.2d at 1108.
Reviewing all of the circumstances of the transaction, there is sufficient evidence to support the inference of the intent to distribute cocaine. The primary fact in favor of such an inference is defendant's sale of the two ounces of cocaine to Polk. Additionally, the testimony of Detective Glasser supports the inference that defendant was engaged in the distribution of cocaine from the house at 600 Pauline. Paraphernalia for distribution, consisting of the baggies, the metric scale, the walkie-talkies, and the intercom, was present at the house. The State proved defendant's guilt beyond a reasonable doubt of intent to distribute cocaine. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2:
In his second assignment of error, defendant complains that R.S. 14:130.1, the crime of obstruction of justice, is unconstitutionally vague in that persons of reasonable intelligence are not capable of understanding its meaning and are not able to conform to the statute.
In this case the defendant did not raise the issue of the Statute's constitutionality in the trial court either by way of a motion to quash under C.Cr.P. art. 532 or by way of a motion in arrest of judgment under C.Cr.P. art. 859. The trial court did not hold a hearing or decide this issue. The constitutional attack on the statute is presented for the first time in the assignment of error statement filed in the district court ex post trial and post trial motions.
Following the precedent in this Circuit, and the 3rd and 5th Circuits, we refuse to consider this argument because the defendant has not complied with the correct procedural method to attack the constitutionality of the Statute. State v. Picchini, 463 So.2d 714 (La.App. 4th Cir.1985), writ den. 468 So.2d 1202 (La.1985); State v. Henry, 443 So.2d 657 (La.App. 3rd Cir.1983); State v. Tanner, 534 So.2d 535 (La.App. 5th Cir. 1988).
Thus we give no consideration to this assignment of error.
The defendants conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Also charged with defendant on count one were Norbert Henry and Melvin Hookfin who pleaded guilty prior to trial. It should also be noted that defendant's name, as it appears in the bill of information is "Bobby Hookfin", but also appears in the record as "Hoofkin" and "Hoofin".